Roy Lee THOMAS *v.* STATE of Arkansas

CR 01-974 79 S.W.3d 347

Supreme Court of Arkansas
Opinion delivered June 27, 2002

*Cymber L. Tadlock*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Roy Lee Thomas appeals the judgment of the Jefferson County Circuit Court, Second Division, convicting him of sexual solicitation of a child, a Class D felony, and sentencing him to six years' probation, a $6,000 fine, a $350 public defender fee, various court costs, 120 hours of community service, and counseling. For reversal, Thomas argues that the trial court erred in excluding rel-

evant testimony of the victim's family life and background. The State has filed a cross-appeal from the sentencing order, asserting that the trial court erred by placing Thomas on probation after the jury had rejected any alternative sentence and fixed a sentence of imprisonment. As this case involves an appeal by the State, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(8) and Ark. R. App. P.—Crim. 3. We affirm the trial court's judgment.

■ Because Thomas does not challenge the sufficiency of the evidence to convict him, we will only discuss those facts pertinent to the issues raised. We first address Thomas's argument that evidence of the victim's background and family life was relevant to the issue of the victim's credibility. Thomas asserts that he should have been allowed to question the victim's grandmother, Lillie Hunter, about the victim's relationship with her estranged mother. We note at the outset that the decision to admit or exclude evidence is within the sound discretion of the trial court. *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001). We will not reverse a trial court's evidentiary ruling absent an abuse of discretion. *Id.* Nor will we reverse absent a showing of prejudice. *Id.* With this standard in mind, we review Thomas's argument.

The record reflects that Thomas was charged with having committed the offense of sexual abuse in the first degree by engaging in sexual contact with the victim, who was ten years old at the time. The charge stemmed from an incident that occurred on November 30, 1999, in which the victim went to Thomas's house to collect money that Thomas owed her for doing some work around his house. According·to the victim, Thomas had told her that the money was in the bedroom on his dresser, and he instructed her to come in there to get it. At the time, Thomas was only wearing a robe. Once she went into the bedroom, Thomas began to remove the girl's clothes. He then laid her on the bed, took off his robe, laid on top of her, and rubbed his penis on the outside of her vagina.

The victim's grandmother, Ms. Hunter, testified on behalf of the State. During her cross-examination, it was revealed that the victim had come to live with Ms. Hunter when she was one-and-

a-half years old. Ms. Hunter explained that the victim's mother was unfit, and that she had agreed to take care of the child to keep her from being placed in a foster home. Defense counsel asked Ms. Hunter if the child's mother came around often. Ms. Hunter stated that she did not. Defense counsel then asked Ms. Hunter when the victim had last seen her mother. The State objected to the question as being irrelevant. The trial court agreed and sustained the objection. At that point, defense counsel ended her cross-examination of Ms. Hunter.

Thomas now argues that the trial court erred in sustaining the State's objection and excluding the testimony, because the victim's family life and background were such that she could have had a motivation to lie about Thomas's actions. He contends that the jury could have used that information in assessing the credibility of the victim's testimony. The State contends that this argument is procedurally barred because Thomas never made the argument below, nor did he proffer the substance of the testimony that he wished to elicit from the witness.

■ ■ We agree with the State that this point is barred because Thomas failed to apprise the trial court of the evidence that he now claims was relevant. Our rules of evidence require that when challenging the exclusion of evidence, a party must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. *See Halford v. State*, 342 Ark. 80, 27 S.W.3d 346 (2000); *Goff v. State*, 341 Ark. 567, 19 S.W.3d 579 (2000); Ark. R. Evid. 103(a)(2). Thomas did not proffer the particular evidence that he now claims is relevant, and its substance is not apparent from the context of the questions. Moreover, we are at a loss as to how the fact that the victim's mother had abandoned her at a young age was in any way relevant to the victim's credibility as a witness. We are not aware of any direct correlation between a child's difficult or unstable background and her ability to tell the truth. Not surprisingly, Thomas cites no authority for this novel theory. Accordingly, we affirm the trial court's ruling on this issue.

*Cross-Appeal*

For its cross-appeal, the State argues that the trial court erred in placing Thomas on probation after the jury had already rejected probation and fixed his punishment at six years' imprisonment, the maximum prison sentence for a Class D felony. The State contends that the trial court exceeded its statutory authority in reducing Thomas's sentence, as it contends that Acts 535 and 551 of 1993 placed that authority solely in the jury.[1] The State does not challenge the actual terms of the sentence, only the trial court's authority to make any reduction in the jury's sentence. Before we address the merits of this issue, we must first determine that we have jurisdiction of the State's appeal.

The State's ability to appeal is not a matter of right; rather, it is limited to those cases described under Ark. R. App. P.—Crim. 3. *See State v. Pruitt*, 347 Ark. 355, 64 S.W.3d 255 (2002); *State v. Howard*, 341 Ark. 640, 19 S.W.3d 4 (2000). Under Rule 3, we accept appeals by the State when our holding would establish important precedent or would be important to the correct and uniform administration of the criminal law. *See State v. Osborn*, 345 Ark. 196, 45 S.W.3d 373 (2001); *State v. Stephenson*, 340 Ark. 229, 9 S.W.3d 495 (2000). Sentencing and the manner in which statutory punishment provisions may be imposed arise in every criminal case where a conviction is obtained; hence, the application of our statutory sentencing procedures requires uniformity and consistency. *Id.* The issue raised by the State in this case concerns the trial court's authority to reduce a sentence fixed by a jury. Resolution of this issue will undoubtedly affect every criminal case tried before a jury. Accordingly, we have jurisdiction of the State's appeal.

The record reflects that the jury returned its verdict at the trial on September 26, 2000. The trial court did not pronounce sentence on Thomas at that time; rather, the trial court only addressed Thomas's right to appeal and the need for an appeal bond. Two days later, the State filed a motion asking the trial

---

[1] Acts 535 and 551 of 1993 are identical pieces of legislation. *See Watkins v. State*, 320 Ark. 163, 895 S.W.2d 532 (1995).

court to hold a sentencing hearing within thirty days. No action was taken on the motion. On November 15, 2000, the State filed a second motion to set a sentencing hearing. Again, no action was taken. Finally, on December 5, 2000, without a hearing or notice to the State or the victim, the trial court entered an order sentencing Thomas to six years' probation and a $6,000 fine, plus costs, counseling, and 120 days of community service. The State filed a motion for reconsideration of the sentence, but that motion was subsequently denied. Thereafter, the State timely filed a notice of cross-appeal.

For reversal, the State contends that the trial court lacked authority to reject the sentence fixed by the jury and impose an alternative sentence of probation. The State contends that the power afforded to the jury to fix punishment in criminal cases tried to a jury, pursuant to Ark. Code Ann. §§ 5-4-103 (Repl. 1997) and 16-97-101 (Supp. 2001), conflicts with the authority given to the trial judge to reduce a jury's sentence, pursuant to Ark. Code Ann. § 16-90-107(e) (1987). Because sections 5-4-103 and 16-97-101 were enacted after section 16-90-107(e), the State contends that section 16-90-107(e) has been repealed by implication. We disagree.

It is well settled that statutes relating to the same subject should be read in a harmonious manner, if possible. *Wells v. State*, 337 Ark. 586, 991 S.W.2d 114 (1999); *Reed v. State*, 330 Ark. 645, 957 S.W.2d 174 (1997). All legislative acts relating to the same subject are said to be *in pari materia* and must be construed together and made to stand if they are capable of being reconciled. *Id.* It is also well settled that repeal by implication is not favored. *See Manatt v. State*, 311 Ark. 17, 842 S.W.2d 845, cert. denied, 507 U.S. 1005 (1992); *Uilkie v. State*, 309 Ark. 48, 827 S.W.2d 131 (1992); *Watson v. State*, 71 Ark. App. 52, 26 S.W.3d 588 (2000). Repeal by implication is only recognized in two situations: (1) where the statutes are in irreconcilable conflict, and (2) where the legislature takes up the whole subject anew, covering the entire subject matter of the earlier statute and adding provisions clearly showing that it was intended as a substitute for the former provision. *Uilkie*, 309 Ark. 48, 827 S.W.2d 131.

Section 5-4-103(a) provides: "If a defendant is charged with a felony and is found guilty of an offense by a jury, the jury shall fix punishment in a separate proceeding as authorized by this chapter." Subsection (b) then provides five instances in which the court shall fix punishment, none of which is relevant to this case. Section 5-4-103 was originally enacted in Act 280 of 1975, which created our comprehensive Criminal Code. It was subsequently amended by Acts 535 and 551 of 1993. The 1993 amendment added the language "charged with a felony" and "in a separate proceeding" to subsection (a). The 1993 amendment also added to subsection (b) an additional situation in which the court may fix punishment.

 Like section 5-4-103, section 16-97-101 also provides for the procedure for sentencing in jury trials. First enacted in Acts 535 and 551 of 1993, section 16-97-101 made changes in the procedures governing jury trials by providing for separate consideration of guilt and sentencing, commonly known as bifurcated proceedings. *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994). Section 16-97-101 provides in pertinent part:

The following procedure shall govern jury trials which include any felony charges:

(1) The jury shall first hear all evidence relevant to every charge on which a defendant is being tried and shall retire to reach a verdict on each charge.

(2) If the defendant is found guilty of one (1) or more charges, the jury shall then hear additional evidence relevant to sentencing on those charges. Evidence introduced in the guilt phase may be considered, but need not be reintroduced at the sentencing phase.

(3) Following the introduction of additional evidence relevant to sentencing, if any, instruction on the law, and argument, the jury shall again retire and determine a sentence within the statutory range.

(4) The court, in its discretion, may also instruct the jury that counsel may argue as to alternative sentences for which the defendant may qualify. The jury, in its discretion, may make a recommendation as to an alternative sentence. However, this recommendation shall not be binding on the court.

Section 16-90-107(e), on the other hand, was originally enacted in Act 440 of 1907 and was first codified as Rev. Stat. ch. 45, § 179 (1837). It provides:

> ·The court *shall have power, in all cases of conviction, to reduce the extent or duration of the punishment assessed by a jury* if, in the opinion of the court, the conviction is proper and the punishment assessed is greater than, under the circumstances of the case, ought to be inflicted, so that the punishment is not, in any case, reduced below the limit prescribed by law in such cases. [Emphasis added.]

This section plainly authorizes the trial judge to reduce a defendant's sentence if, in the trial judge's opinion, the jury's sentence was too harsh under the circumstances of the case. Indeed, this court has consistently recognized the authority of the trial court to reduce a defendant's sentence, pursuant to this provision, after the jury has returned a verdict of punishment. *See, e.g, Riggins v. State*, 329 Ark. 171, 946 S.W.2d 691 (1997); *Richards v. State*, 309 Ark. 133, 827 S.W.2d 155 (1992); *Walker v. State*, 309 Ark. 23, 827 S.W.2d 637 (1992); *Rogers v. State*, 265 Ark. 945, 582 S.W.2d 7 (1979); *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106, *cert. denied*, 434 U.S. 878 (1977). This court explained in *Collins*:

> In practice we have regarded this statute as giving the trial judge an opportunity to review the sentence, from his superior ability to evaluate facts, afforded by seeing and hearing the parties and witnesses and knowing the trial atmosphere, as he would weigh the evidence in considering a motion for new trial.

*Id.* at 209, 548 S.W.2d at 114.

We conclude that section 16-90-107(e) does not conflict with sections 5-4-103 and 16-97-101, both of which provide that the jury shall "fix" or "determine" punishment. Section 16-90-107(e) does not authorize the trial judge to "fix" or "determine" punishment or in any way interfere with the jury's right to do so. Rather, it merely allows the judge to *reduce* the punishment assessed by the jury if, under the circumstances, the judge considers the punishment excessive. In this respect, section 16-90-107(e) is a safety net of sorts, placing discretion with the trial judge to check jury sentences that are excessive or unduly harsh under

the particular circumstances of a case. It is harmonious with, and complementary to, the jury's power to fix punishment found in sections 5-4-103 and 16-97-101. Because these statutes are not in conflict, there is no repeal by implication. *See Manatt*, 311 Ark. 17, 842 S.W.2d 845; *Watson*, 71 Ark. App. 52, 26 S.W.3d 588.

 Furthermore, contrary to the State's argument, Acts 535 and 551 did not take up the whole subject of sentencing such that they clearly show that the legislature intended the Acts to be a substitute for section 16-90-107(e). Insofar as they pertain to the sentencing authority provided in sections 5-4-103 and 16-97-101, Acts 535 and 551 merely altered the timing and procedure for sentencing in felony jury trials. Under those Acts, the jury fixes guilt or innocence in the first stage; if a verdict of guilt is rendered, the jury then hears any additional evidence relevant to sentencing before again retiring to determine punishment. Prior to those Acts, the jury made both guilt and punishment determinations simultaneously. *See Rush v. State*, 324 Ark. 147, 919 S.W.2d 933 (1996); *Hill*, 318 Ark. 408, 887 S.W.2d 275. Those Acts, however, did not broaden the authority already given to the jury to fix punishment.

 The jury has been empowered to fix punishment in all criminal cases tried before the jury since the passage of Act 280 of 1975. Section 802(1) of Act 280 provided: "If a defendant is found guilty of an offense by a jury, the jury shall fix punishment as authorized by this Article." That provision is now codified as section 5-4-103(a). Acts 535 and 551 did nothing to alter the jury's sentencing authority. In fact, the only substantive change to section 5-4-103 made by the Acts actually broadened the circumstances in which the *court* may fix punishment, by adding a provision to subsection (b) allowing the court to fix punishment where the prosecution and defense agree. Thus, Acts 535 and 551 did not broaden the jury's sentencing authority or reduce the trial court's sentencing authority.

In sum, the power of the jury to fix punishment has coexisted for many decades with the power of the trial judge to reduce any sentence assessed by the jury that the judge believed was too harsh or excessive under the circumstances of the case. Acts 535

and 551 did nothing to alter the balance of power previously allocated by the legislature. Had the legislature intended to strip the trial judge of the long-established discretion to reduce a defendant's sentence, we have no doubt that such an intention would have been stated clearly. Because it is not apparent that the legislature intended Acts 535 and 551 to be a substitute for section 16-90-107(e), there is no repeal by implication.

 Finally, we address the State's alternative argument that the trial court's authority to reduce a sentence under section 16-90-107(e) may be exercised only when a request for leniency has been made by the defendant. The State contends that no such request was made here and that the trial court exceeded its authority by reducing the sentence *sua sponte*. The State relies on language from *Riggins*, 329 Ark. 171, 946 S.W.2d 691, wherein this court observed that the trial court in that case could have honored a request for leniency pursuant to section 16-90-107(e). We are hard pressed to see how such an observation could be construed as adding an element to the statute that simply is not there. In short, the statute does not condition the trial court's power to reduce a sentence upon a request for leniency being made by the defendant, and we will not read any such additional element into it.

Accordingly, we conclude that the trial court acted within its statutory power in reducing the sentence fixed by the jury. Notwithstanding this conclusion, we modify that part of the judgment that reflects that Thomas was sentenced pursuant to Act 346 of 1975, better known as the Arkansas First Offender Act. *See Lewis v. State*, 336 Ark. 469, 986 S.W.2d 95 (1999). Under Act 346, an accused enters a plea of guilty or *nolo contendere* prior to an adjudication of guilt, and the circuit court, without entering a judgment of guilt and with the consent of the defendant, may defer further proceedings and place the defendant on probation for a period of not less than one year. *See* Ark. Code Ann. § 16-93-303(a)(1)(A) (Supp. 2001); *Baxter v. State*, 324 Ark. 440, 922 S.W.2d 682 (1996). Thereafter, upon fulfillment of the terms and conditions of probation, the defendant shall be discharged without court adjudication of guilt, and the court shall enter an order discharging the defendant and expunging the record. *See* Ark. Code Ann. § 16-93-303(b) (Supp. 2001).

Section 16-93-303(a) was amended by Act 1407 of 1999 to provide that "*no person who pleads guilty, nolo contendere, or is found guilty of a sexual offense as defined by Chapter 5, Title 14, Arkansas Code of 1987 Annotated where the victim was under the age of eighteen (18) years shall be eligible for expungement of the record under this sub-chapter*[.]" Thomas was convicted of the crime of sexual solicitation of a child, in violation of Ark. Code Ann. § 5-14-110 (Repl. 1997).[2] He is therefore not eligible to have his record expunged under Act 346.

We are mindful of the fact that the State has not challenged this part of Thomas's sentence. Notwithstanding, this court views an issue of a void or illegal sentence as being an issue of subject-matter jurisdiction, in that it cannot be waived by the parties and thus may be addressed for the first time on appeal. *See, e.g., Flowers v. Norris*, 347 Ark. 760, 68 S.W.3d 289 (2002); *Bangs v. State*, 310 Ark. 235, 835 S.W.2d 294 (1992); *Lambert v. State*, 286 Ark. 408, 692 S.W.2d 238 (1985). A sentence is void or illegal when the trial court lacks authority to impose it. *Id.* Under the circumstances of this case, the trial court lacked the authority to sentence Thomas under Act 346. That portion of the sentence is therefore illegal. This court may correct this error without reversing and remanding for resentencing. *See Renshaw v. Norris*, 337 Ark. 494, 989 S.W.2d 515 (1999); *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996). Accordingly, we modify Thomas's sentence to reflect that his probation is not pursuant to Act 346 and that he is not entitled to the expungement provisions therein.

Affirmed on appeal; affirmed as modified on cross-appeal.

IMBER, J., not participating.

---

[2] The offense is now titled "Sexual indecency with a child." *See* Ark. Code Ann. § 5-14-110 (Supp. 2001).